IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and THE STATE OF MICHIGAN, ) ) ) Plaintiffs, ) ) v. ) ) NCR CORPORATION, ) ) Defendant, ) ) GEORGIA-PACIFIC LLC, ) GEORGIA-PACIFIC CONSUMER ) PRODUCTS LP, INTERNATIONAL ) PAPER COMPANY, AND ) WEYERHAEUSER COMPANY ) ) Intervenors. ) | Civil Action No. 1:19-cv-1041 Chief Judge Robert J. Jonker Magistrate Judge Ray Kent |

**INTERVENOR INTERNATIONAL PAPER COMPANY'S RESPONSE
TO THE UNITED STATES' MOTION TO ENTER CONSENT DECREE WITH NCR
CORPORATION AND TO NCR CORPORATION'S MEMORANDUM OF LAW IN
SUPPORT OF ENTRY OF THE CONSENT DECREE**

**I.   INTRODUCTION**

The United States has moved (the "Motion"; ECF No. 10 and No. 11) to have the Court approve and enter its Consent Decree with NCR Corporation ("NCR"), which was lodged with the Court on December 11, 2019 (the "Consent Decree"; ECF No. 2). The State of Michigan joined the United States' Motion (ECF No. 12) and NCR filed its own memorandum in support of the motion (the "NCR Memo"; ECF No. 26).

Intervenor International Paper Company ("International Paper") supports entry of the Consent Decree. International Paper does not, however, support efforts by NCR or the United

States to obtain an advisory opinion from the Court as to what contribution protection language from the United States Environmental Protection Agency's ("EPA") model consent decree[1] *might* mean in the context of other or future actions related to the Site. The impact of the Consent Decree on the rights of other parties does not need to be decided in order to enter the Consent Decree. Those matters should be decided based on concrete facts, in specific actions, and under the then-controlling law. For example, as to International Paper, the very issue of whether or not it is a liable party under CERCLA is the subject of a current appeal to the Sixth Circuit Court of Appeals. Until there is a final adjudication of International Paper's liability at the Site, International Paper's potential to pursue a CERCLA § 107 claim cannot be determined. Efforts to draw the Court into advising NCR or any other party on what their rights *may* be in the future is inappropriate and would exceed the Constitution's limits on Article III powers.

## II.     BACKGROUND FACTS

### A.     Pending Litigation Regarding the Site

In decisions dated September 26, 2013 and March 29, 2018 in *Georgia-Pacific Consumer Products LP v. NCR Corp., et al.*, 1:11-cv-483 (W.D. Mich.) (the "*GP v. NCR* Action"), this Court first found that NCR and International Paper were liable parties under CERCLA Section 107(a) with respect to the Allied Paper, Inc./Portage Creek/Kalamazoo River Superfund Site ("Kalamazoo River Superfund Site" or "Site") and then equitably allocated certain of GP's past costs incurred at the Site among GP, NCR, International Paper and Weyerhaeuser Company ("Weyerhaeuser"). Aspects of the Court's decisions and final judgment in the *GP v. NCR* Action

---

[1] As noted in the United States' Motion, p. 15, fn. 8 (PageID.285), "EPA's model RD/RA Consent Decree can be found here: https://cfpub.epa.gov/compliance/models/view.cfm?model_ID=81."

are currently on appeal, including the specific determination that International Paper is a liable party under Section 107.

Since 2016, International Paper has been performing certain work at the Site in response to unilateral administrative orders issued to it by the EPA.  In 2018, International Paper brought a separate action against NCR, as well as GP and Weyerhaeuser, *International Paper Company v. Georgia-Pacific Consumer Products LP, et al.*, 1:18-cv-1229 (the "*International Paper* Action").  The *International Paper* Action includes a cause of action under Section 107 of CERCLA.  *International Paper* Action, ECF No. 1; PageID.9.  The *International Paper* Action was brought, in part, to protect International Paper's rights during the pendency of the parties' appeals of the judgment in the *GP v. NCR* Action, including against NCR, in the event that the determination that International Paper is a liable party under CERCLA at the Site is reversed.

    **B.**  **International Paper's Comments on the Proposed Consent Decree**

International Paper submitted timely comments on the proposed Consent Decree on February 18, 2020.  International Paper's comments were purposefully measured in their scope.  *See* ECF No. 11-1; PageID.303-304.  International Paper joined "in the portion of the comments submitted by [Weyerhaeuser] which advocates in favor of modifying the Consent Decree to clarify that no transfer of the NCR settlement funds to the EPA Hazardous Substance Superfund will occur until all Site response actions are completed."  Substantively, International Paper made the following point in its comments:

> International Paper agrees with Weyerhaeuser that for the $210.7 million amount to arguably "be considered in the ballpark of a fair and reasonable reflection of NCR's proportional responsibility for the Site," the settlement payments to be made by NCR must be "committed to the Site to fund future response actions."

3

4827-5524-6272.6

In other words, based on NCR's estimated contribution through the Consent Decree of approximately $200 million of the total potential Site expenditure of at least $851 million, if not more,[2] International Paper believes that *all* funds paid by NCR under the Consent Decree need to be committed by EPA to the Site.  The United States appears to have acknowledged that EPA intends to use all such funds at the Site, as long as work is required at the Site, noting that "EPA intends to use the funds for cleanup at this Site, consistence with its guidance."  Motion, p. 26; PageID.296.

        C.        **The United States' Motion to Enter the Consent Decree**

While the United States' Motion focuses on GP's more extensive comments, the United States does make limited reference to International Paper.  For example, the United States asserts that "it is notable that other PRPs, who have yet to resolve their Site liability, – Weyerhaeuser and International Paper – do not challenge the fairness of the Consent Decree."  Motion, p. 23; PageID.293.[3]  That is correct.  International Paper does not "challenge the fairness of the Consent Decree" *if* all proceeds are committed to and used at the Site.

The United States, however, then goes on to state that "[r]esolution of NCR's liability would also extinguish International Paper's suit against NCR," citing to the *International Paper* Action.  Motion, p. 23; PageID.293.  The proposed Consent Decree *does not* address the *International Paper* Action—an action, as noted above, that is stayed and was brought by International Paper, in part, under CERCLA § 107, to, among other things, preserve International Paper's rights to recovery should it be successful in establishing that it is not a liable party.

---

[2] Motion, p. 5, PageID.275 ("EPA estimates total Site cost to be approximately $851 million.") Note, however, Site cleanup-cost estimates have varied over time, with the EPA previously estimating Site cleanup costs of over $2.6 billion. *See, e.g.*, October 2000 FS.

[3]  Other than NCR, none of the other PRPs have yet to resolve their Site liability with the United States or the State of Michigan.

4

**D.      The NCR Memo**

NCR does not argue simply for entry of the Consent Decree.  Rather, NCR goes a step further, arguing, in essence, that the Court should *rule* now that entry of the Consent Decree goes beyond its express language and bars any and all future claims by any other parties—GP in particular—under CERCLA §§ 113 or 107, under any circumstances.  For example, NCR argues that through entry of the Consent Decree, "NCR was assured peace with respect to the Site in the form of Site-wide contribution protection."  NRC Memo, p. 1; PageID.421.  Aside from NCR's resolution of its liability at the Site with respect to the United States and the State of Michigan, the Consent Decree, by its express terms, provides only that NCR is entitled to "protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, or as may be otherwise provided by law," using the language of the EPA model consent decree.  It does not provide that NCR is entitled to protection from claims by *all* parties under *all* circumstances.

Further, in response to GP's comments on the draft Consent Decree, NCR claims it is entitled to a ruling now that GP (and other parties, arguably including International Paper) are barred from bringing a CERCLA § 107 claim against NCR at any time in the "future."  NCR Memo, p. 2; PageID.422.  To support this argument, NCR states that "this Court has previously ruled" that "GP may now recover against others only through § 113."  *Id*.  NCR then recites GP's long history at the Site, including GP's entry into prior litigation dating back 25 years and entry into multiple Administrative Settlement Agreement and Orders on Consent ("ASAOCs") with respect to the Site.[4]  *See*, *e.g*., NCR Memo, p. 2-4; ECF No. 26, p. 6-8 of 24; PageID.422-424.

---

[4] Notably, NCR does not argue—nor can it—that any such similar ruling has been made with respect to International Paper.  International Paper has a very different history with respect to the Site.  For example, International Paper has not entered into a single ASAOC with respect to the Site. Moreover, unlike, GP, which has conceded its liability, International Paper has appealed

5

As noted by NCR, GP argued in its comments on the draft Consent Decree that GP and "other PRPs retain the option to fulfill their obligations at the Site without resolving liability (*e.g.* by performing work pursuant to unilateral administrative orders), thus preserving the ability to pursue a cost-recovery claim against NCR under CERCLA section 107." GP Comments, ECF No. 11-1 at 13-14, PageID.327-328.  International Paper did not raise this issue in its comments, given that it arguably goes to the scope of the protections afforded by the model consent decree language.  NCR, however, incorrectly, assumes that International Paper's silence on the issue was some type of concession.[5]  It was not.

### E. The Relevant, Express Terms of the Consent Decree

The Consent Decree, by its express terms, does not resolve all of NCR's liability with respect to the Site, contrary to what NCR claims in the NCR Memo.  Rather, the express language of the Consent Decree tracks EPA's model consent decree and provides:

> The Parties agree, and by entering this CD this Court finds, that this CD constitutes a judicially-approved settlement pursuant to which [NCR] has, as of the Effective Date, resolved liability *to the United States* within the meaning of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and is entitled, as of the Effective Date, to protection from contribution actions or claims *as provided by Section 113(f)(2)* of CERCLA, *or as may be otherwise provided by law*, for the 'matters addressed' in this CD.

ECF No. 2-1 at ¶ 94, PageID.54.  (Emphasis added.)  *Cf.* EPA's model consent decree, Paragraph 91.[6]

---

from the judgment in the *GP v. NCR* Action on the basis that it is not a liable party under CERCLA with respect to the Site.

[5] *See* NCR's footnote 2 ("Weyerhaeuser and IP did not advance GP's argument in their public comments, and presumably agree with NCR and the Government.")  NCR Memo, p. 2; PageID.427.

[6] As noted above, EPA's model Consent Decree can be found here: https://cfpub.epa.gov/compliance/models/view.cfm?model_ID=81.

## III.     THE ADVISORY OPINION NCR SEEKS IS IMPROPER

It is well settled that the "exercise of judicial power under Art. III of the Constitution depends on the existence of a case or controversy." *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975); *see also Saginaw County, Michigan v. STAT Emergency Medical Services, Inc.,* 946 F.3d 951, 954 (6th Cir. 2020) ("The U.S. Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.' U.S. Const. art. III, § 2."). It follows that a federal court does not have the power to issue "advisory opinions." *Saginaw County, Michigan,* 946 F.3d at 954 ("That rules out advisory pronouncements, which the case-or-controversy requirement has long forbidden.").

As such, the Court does not have jurisdiction to, in essence, grant declaratory relief as to the rights or liabilities of parties that do not yet exist or are not certain to arise. *See Calderon v. Ashmus*, 523 U.S. 740, 746-747 (1998) (no case or controversy in matter where party sought to have an issue "determined in anticipation of seeking habeas so that he will be better able to know, for example, the time limits that govern the habeas action."). As the Supreme Court noted in *Calderon*, "attempts to gain a litigation advantage by obtaining an advance ruling on an affirmative defense" is not a valid basis of Article III jurisdiction. *Id*. at 747.

Further, as the Court is well aware, the ripeness doctrine prevents premature adjudication of matters. *See*, *e.g*., *Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008) ("[r]ipeness 'is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.'" Citation omitted). A claim that "depends on 'contingent future events that may not occur as anticipated, or indeed may not occur at all'" is not ripe for adjudication. *Id.* at 526 (citation omitted).

7

4827-5524-6272.6

Here, NCR seeks confirmation that the Consent Decree, once entered, will bar GP and other PRPs from pursuing future claims, of any nature, on any basis, against NCR relating to the Site.  Not only are those hypothetical, future disputes not "ripe," they also do not form a current "case or controversy" that can be adjudicated at this time.  As such, the United States' assertion that the Consent Decree "would also extinguish International Paper's suit against NCR" may not be the case—and at a minimum is premature and inappropriate for adjudication at this time or in this proceeding.  With respect to the *International Paper* Action—which is currently stayed—there are a multitude of unknowns, including, for example, if International Paper will prevail in its appeal in the *GP v. NCR* Action and whether International Paper will ultimately elect to pursue that case against NCR once the stay is lifted.  As such, International Paper respectfully requests that the Court refrain from issuing an improper "advisory opinion" on such matters now—despite the apparent urging to do so by NCR and/or the United States—and limit itself solely to the matter currently before it—whether or not to enter the Consent Decree.

Dated:  July 14, 2020   Respectfully submitted,

By: /s/ John D. Parker

JOHN D. PARKER
jparker@bakerlaw.com
**BAKER & HOSTETLER LLP**
127 Public Square, Suite 2000
Cleveland, OH  44114-1214
Tel: (216) 621-0200

RYAN D. FISCHBACH
rfischbach@bakerlaw.com
**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025-0509
Tel: (310) 820-8800

8

4827-5524-6272.6

JOHN F. CERMAK, JR.
jcermak@cermaklegal.com
SONJA A. INGLIN
singlin@cermaklegal.com
**CERMAK & INGLIN LLP**
12121 Wilshire Boulevard, Suite 322
Los Angeles, CA 90025-1166
Tel: (424) 465-1531

And by:

DAVID W. CENTNER
dcentner@clarkhill.com
**CLARK HILL PLC**
200 Ottawa Avenue NW, Suite 500
Grand Rapids, MI 49503
Tel: (616) 608-1106

*Attorneys for*
INTERNATIONAL PAPER COMPANY